**SO ORDERED.**

**Dated: August 30, 2023**

**Daniel P. Collins, Bankruptcy Judge**
_____

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **In re** | ) | Chapter 7 Proceedings |
| | ) | |
| **POTENTIAL DYNAMIX, LLC,** | ) | Case No: 2:11-bk-28944-DPC |
| | ) | |
| **Debtor.** | ) | **UNDER ADVISEMENT** |
| | ) | **ORDER RE STANDING** |
| | ) | |
| | ) | (Not for Publication – Electronic |
| | ) | Docketing ONLY)[1] |
| | ) | |
| | ) | |

        Before this Court is the issue of whether Scott Goldberg ("Goldberg") and Cody Jess ("Jess") have standing to object to (1) the First Interim Application for Compensation and Reimbursement of Fees ("Fee Application")[2] for Gallagher & Kennedy ("G&K"), Attorneys for the Chapter 11 Trustee and (2) the Application to Employ G&K ("Application to Employ")[3] as Special Counsel to Conclude the Representation of the Trustee in Adversary 2:13-ap-00799. Based on the parties' briefs, oral arguments, and case law, this Court finds that Goldberg and Jess have standing to object to G&K's Fee Application and G&K's Application to Employ.

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052.

[2] DE 673. "DE" references a docket entry in bankruptcy case 2:11-bk-28944-DPC.

[3] DE 579.

## I. BACKGROUND

Goldberg, Jess, and Dale Schian ("Schian") are members of the law firm Schian Walker, PLC ("SW"). In 2013, SW was employed in this bankruptcy case to represent the chapter 11 trustee, Timothy Shaffer ("Shaffer") in adversary proceeding 2:13-ap-00799 ("Amazon Adversary").[4] In a separate bankruptcy case before this Court, SW represented Daniel Dooley ("Dooley"), the litigation trustee in Swift Air, LLC, case number 2:12-bk-14362 ("Swift"). Around August 2019, Goldberg and Jess joined the law firm of Moyes Sellers Hendricks ("MSH") and Schian joined G&K. SW was eventually placed into a state court receivership ("SW Receivership"). SW was unable to continue its representation of Shaffer in the Amazon Adversary.

On January 30, 2020, G&K filed its Application to Employ to substitute for SW as counsel for Shaffer in the Amazon Adversary.[5] The Application to Employ attached an exhibit titled agreement of counsel ("Agreement of Counsel"). The Agreement of Counsel contained a cross-collateralization provision whereby G&K was to be paid not only from the Amazon Adversary but also from SW's interests in proceeds ("Swift Proceeds") in a separate adversary proceeding, case number 2:14-ap-00534 ("Swift Adversary Proceeding"), in the Swift bankruptcy case. Specifically, the Agreement of Counsel stated G&K is to be paid "[f]rom the amounts otherwise payable to SW."[6] The Agreement of Counsel was signed by Schian on behalf of SW and signed by Michael Kennedy on behalf of G&K.[7] Goldberg and Jess maintain that this cross-collateral provision was used despite Dooley warning G&K and Schian in the Swift case to not intertwine the Swift Adversary Proceeding and the Amazon Adversary litigation.[8]

---

[4] DE 289.
[5] DE 579.
[6] DE 579, Exhibit A.
[7] *Id.*
[8] DE 693.

On September 15, 2022, G&K filed its first interim Fee Application, seeking $1.9 million in total fees and costs.[9] On October 14, 2022, Goldberg and Jess[10] filed a motion for abstention[11] related to G&K's Fee Application and simultaneously filed a limited objection[12] to G&K's Application to Employ to the extent it relies on the Agreement of Counsel. G&K responded that Goldberg and Jess did not have standing because, even though they have an interest in funds the SW Receivership may collect from the Amazon Adversary and the Swift Adversary Proceeding, neither Goldberg nor Jess have standing independent of the receiver in the SW Receivership. G&K argues that a beneficial interest in the SW Receivership does not confer standing upon Goldberg and Jess.[13]

Goldberg cites the Ninth Circuit's *Thorpe*[14] decision and claims he has standing under the three *Thorpe* requirements for standing in a bankruptcy proceeding.

After this Court extended the proof of claim bar date to March 1, 2023, in the Potential Dynamix administrative case, Goldberg, in an attempt to solidify his standing in this bankruptcy case, filed proof of claim No. 148 ("Goldberg Administrative POC") alleging he is owed $204,333 as an administrative expense in the Potential Dynamix case for substantial contribution to this estate under § 503(b)(3)(D).[15] Shaffer and G&K objected to the Goldberg Administrative POC. Shaffer ultimately settled the Goldberg Administrative POC for the nominal amount of $500.[16]

Undeterred, Goldberg again attempted to cement his standing when he filed a notice on July 31, 2023 indicating he had purchased an alleged administrative claim from

---

[9] DE 673.

[10] It is not clear to this Court as to whether Jess is still involved in these proceedings. Counsel for Goldberg and Jess has been adamant that Jess settled only with Schian personally, not with G&K. The most recent filings in this bankruptcy case, however, have been on behalf of Goldberg only or filed by Goldberg personally.

[11] DE 691.

[12] DE 693.

[13] DE 707.

[14] *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 884 (9th Cir. 2012).

[15] POC 148-1. "POC" references a proof of claim in bankruptcy case 2:11-bk-28944-DPC.

[16] DE 829. The settlement requires payment of the $500 within 10 days of the entry of the Court's Order approving the settlement. The settlement was approved on August 17, 2023. The Court has not been advised whether the settlement payment has been paid to Goldberg.

1  Ashworth Consulting, LLC ("Ashworth Claim").[17] At oral argument on August 8, 2023,

2  G&K argued that Goldberg acquiring the Ashworth Claim did not retroactively give

3  Goldberg standing to object to G&K's Fee Application or G&K's Application to Employ

4  because Ashworth Consulting, LLC had not timely objected to either the Fee Application

5  or the Application to Employ.[18]

6        According to Goldberg, his standing is tri-fold because: (1) he owns the Goldberg

7  Administrative POC; (2) he owns the Ashworth Claim; and (3) he is a member of SW.[19]

8

9        **II.    JURISDICTION**

10       Pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), this Court has jurisdiction over

11  this case and the issues described in this Order.

12

13       **III.    ISSUE**

14       Whether Goldberg and Jess have standing to object to G&K's Fee Application and

15  G&K's Application to Employ.

16

17       **IV.    DISCUSSION**

18       Standing is determined on a case-by-case basis.[20] In *Thorpe*, the Ninth Circuit

19  Court of Appeals stated that, to have standing in a chapter 11 bankruptcy proceeding, a

20  party must meet three requirements: (1) the "party in interest" requirement under

21  § 1109(b); (2) Article III constitutional requirements; and (3) prudential standing

22  requirements.[21] Although Goldberg and Jess cite to the three requirements for standing

23  ─────────────────────────

24  [17] DE 774; DE 817. After the oral argument was held on August 8, 2023, notice of the assignment was filed on August 17, 2023. DE 828.
    [18] Ironically, Goldberg earlier objected to the Ashworth Claim which he is now purchasing. *See* DE 794.

25  [19] Regardless of whether Goldberg and/or Jess have standing, this Court believes it has an independent duty to review G&K's Fee Application for reasonableness and review G&K's Application to Employ for proper disclosure. A three-hour, non-evidentiary hearing on those matters is currently set for September 26, 2023.

26  [20] *Thorpe*, 677 F.3d at 884 (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).
    [21] *Thorpe*, 677 F.3d at 884.

1    in *Thorpe*, the first requirement ("party in interest" under § 1109(b)) is only applicable

2    in chapter 11 cases. Even though § 1109(b) is not a requirement in this chapter 7 case,[22]

3    this Court believes Goldberg falls within the "party in interest" requirement because

4    Goldberg holds a claim within the meaning of § 101(5). To have standing to object to

5    G&K's Fee Application and G&K's Application to Employ in this case, Goldberg and

6    Jess only need to meet the Article III constitutional requirements and prudential standing

7    requirements.[23]

8           Even though Goldberg has attempted to gain standing by filing the Goldberg

9    Administrative POC (which will presumably soon be paid through his settlement with

10   the Shaffer) and purchasing the Ashworth Claim, the Court need not decide whether those

11   claims confer standing because the crux of the dispute here is whether Goldberg and Jess,

12   as members of SW, have standing (independent of the receiver in the SW Receivership)

13   to object to G&K's Fee Application and Application to Employ. This Court finds

14   Goldberg and Jess do have standing.[24]

15          a.   **Constitutional Standing**

16          To have constitutional standing, a party must demonstrate that:

17          (1) it has suffered an 'injury in fact' that is (a) concrete and particularized
            and (b) actual or imminent, not conjectural or hypothetical; (2) the injury
18          in fact is fairly traceable to the challenged conduct of the [other party]; and
            (3) that it be likely, as opposed to merely speculative, that the injury will
19          be redressed by a favorable decision.[25]

20

---

[22] This case converted from chapter 11 to chapter 7 on January 31, 2023. DE 740.

[23] *Thorpe*, 677 F.3d at 884. It is important to note the difference between standing in bankruptcy court at the trial level and appellate level. Bankruptcy appellate standing employs an additional prudential standing doctrine known as the "person aggrieved" test which is a "more exacting" test than traditional requirements for standing in bankruptcy court at the trial court level. *NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, L.L.P. (In re Highland Cap. Mgmt., L.P.)*, 74 F.4th 361, 366–67 (5th Cir. 2023). Although the Ninth Circuit recently questioned the continuing validity of the "person aggrieved" standard in *Clifton Cap. Grp., LLC v. Sharp (In re East Coast Foods, Inc.)*, the "person aggrieved" standard remains good law. 66 F.4th 1214, 1218 (9th Cir. 2023); *see also A&D Property Consultants, LLC v. A&S Lending, LLC (In re Groves)*, 652 B.R. 104, 113 (9th Cir. 2023).

[24] While this Court finds Goldberg and Jess have standing in this Bankruptcy Court, they may not have bankruptcy appellate standing under the more exacting "person aggrieved" test.

[25] *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

The party seeking to invoke federal jurisdiction has the burden of proof to establish these elements.[26] "A party must establish 'such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'"[27]

### i. Injury in Fact

An injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[28] For an injury in fact to be concrete, it must be an injury that actually exists and is not "abstract, remote, or speculative."[29] Here, Goldberg and Jess point to (1) Section 18(d) of the SW Members Agreement ("SW Members Agreement"); (2) A.R.S. § 29-3707; and (3) Arizona's fraudulent transfer statute as giving rise to their legally protected interest. The Court will address each of these three points in turn.

First, Goldberg and Jess claim that Section 18(d) of the SW Members Agreement "provides for payments to be made to the members of [SW] after all bona fide creditors of [SW] have been paid."[30] The SW Members Agreement that is attached to DE 796 as Exhibit 4 does not have a Section 18(d). Nothing in the SW Members Agreement attached to DE 796 as Exhibit 4 appears to mention such a claim. The Court, therefore, rejects this argument.

Second, A.R.S. § 29-3707 states:

> A. In winding up its activities and affairs, a limited liability company shall apply its assets to discharge the company's obligations to creditors, including members that are creditors.
> B. After a limited liability company complies with subsection A of this section, any surplus assets must be distributed in the following order, subject to any charging order in effect under section 29-3503:

---

[26] *Lujan v. Defs of Wildlife*, 504 U.S. 555, 561 (1992).

[27] *Clifton*, 66 F.4th at 1218 (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009) (emphasis in original)).

[28] *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Lujan*, 504 U.S. at 560.

[29] *Alliance United Ins. Co. v. Kransoff (In re Venegas)*, 623 B.R. 555, 561 (9th Cir. BAP 2020) (quoting *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020)) (internal quotations omitted).

[30] DE 796, page 6.

1   1. To each person owning a transferable interest that reflects contributions made and not previously returned, an amount equal to the value of the unreturned contributions.
2   2. Among persons owning transferable interests in proportion to their respective rights to share in distributions immediately before the dissolution of the company.
3
4   C. If a limited liability company does not have sufficient surplus assets to comply with subsection B, paragraph 1 of this section, any surplus must be distributed among the owners of transferable interests in proportion to the value of the respective unreturned contributions.
5
6   D. All distributions made under subsections B and C of this section must be paid in money.[31]
7

8   This section provides Goldberg and Jess, as members of SW, with a legally protected

9   interest because, after all of SW's obligations to its creditors are discharged, A.R.S. § 29-

10  3707 gives members owning a transferable interest a pro-rata amount of the surplus. This

11  legally protected interest is not "abstract, remote, or speculative." Rather, it is a

12  quantifiable amount that will flow to the members of SW once the creditors of the SW

13  Receivership estate have been fully paid. Prior to the June 20, 2023 hearing, Goldberg

14  and Jess notified this Court that they had filed a motion to abandon assets in the SW

15  Receivership because all creditors of SW had been fully paid and the remaining excess

16  funds pertain to a member-only dispute, apart from the receiver and the SW Receivership.

17  At the June 20, 2023 hearing, counsel for the receiver in the SW Receivership notified

18  the Court that all unsecured creditors of SW had been paid, except Jess' unsecured claim

19  arising from a settlement with Schian. Since SW's creditors have all or nearly all been

20  paid, the SW Receivership is merely now a conduit for the remaining assets to be paid

21  directly to the three SW members. It is essentially the SW members alone that have a

22  financial stake in this Court's ultimate ruling.

23          Third, Arizona's fraudulent transfer statute (A.R.S. § 44-1001 et. seq.) provides a

24  legally protected interest to creditors of a debtor, "if the debtor made the transfer or

25  incurred the obligation … (1) [w]ith actual intent to hinder, delay or defraud any creditor

26

---

[31] A.R.S. § 29-3707.

of the debtor."[32] To be a creditor under Arizona's fraudulent transfer statute, a creditor must hold a claim, which is defined as "a right to payment, whether or not the right is reduced to judgment[.]"[33] Goldberg and Jess claim that, when Schian improperly signed the Agreement of Counsel on behalf of SW, SW "became obligated to pay over $1.6 million in fees and received no consideration in exchange."[34] Accordingly, Goldberg and Jess maintain that this alleged fraudulent, insider transfer, made while SW was insolvent, is avoidable under Arizona's fraudulent transfer statute. Because they have a right to payment under A.R.S. § 29-3707, Goldberg and Jess have a legally protected interest in seeking to avoid a potential fraudulent transfer.

### ii. Causal Connection

To establish a causal connection supporting their claimed constitutional standing, Goldberg and Jess must show that their "injury was fairly traceable to the challenged action, and not 'th[e] result [of] the independent action of some third party not before the court.'"[35]

Goldberg and Jess' injury is fairly traceable to the misconduct it alleges G&K and Schian committed. Goldberg and Jess allege that the Swift Proceeds should be paid to the members of SW but for the unauthorized cross-collateralization provision of the Application to Employ. Goldberg and Jess allege it was G&K and Schian who allegedly failed to make proper disclosures and allegedly failed to give proper notice on its Application to Employ that caused their injury. The alleged injury to Goldberg and Jess is fairly traceable to the challenged action of G&K and Schian (cross-collateralizing the fees in the Amazon Adversary with the fees from the Swift Adversary Proceeding). A causal connection exists.

---

[32] A.R.S. § 44-1004(A).
[33] A.R.S. § 44-1001(2).
[34] DE 796, page 6.
[35] *Alliance United*, 623 B.R. at 561 (quoting *Lujan*, 504 U.S. at 560–61).

Case 2:11-bk-28944-DPC    Doc 831    Filed 08/30/23    Entered 08/30/23 15:51:47    Desc
Main Document    Page 8 of 11

1

### iii. Redressability

2       The last element of constitutional standing requires that the injury will likely be

3 redressed by a favorable decision.[36] This element is easily met. As explained above, if

4 this Court denies G&K's Application to Employ or denies or reduces the G&K Fee

5 Application, the monies which would otherwise go to G&K would flow to SW's

6 members. Accordingly, a favorable decision would redress Goldberg and Jess' alleged

7 injury.

8

9          **b. Prudential Standing**

10      Even if constitutional standing is satisfied, federal courts also adhere to prudential

11 principles.[37] Notably, the "zone of interests" prudential limitation is implicated here. This

12 prudential limitation requires that a party's "grievance must arguably fall within the zone

13 of interests protected or regulated by the statutory provision or constitutional guarantee

14 invoked in the suit."[38] The zone of interests test "is not especially demanding" and

15 "forecloses suit only when a plaintiff's interests are so marginally related to or

16 inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed

17 that Congress authorized that plaintiff to sue."[39] "The 'zone of interests' requirement is

18 analogous to 'statutory standing.'"[40] In chapter 11 cases, courts typically find that if a

19 party is a "party in interest" under § 1109(b), then that party has statutory standing and,

20 therefore, meets the "zone of interests" prudential requirement. Although this case is no

21 longer a chapter 11 case, this Court is persuaded that the logic behind the "party in

22 interest" standard for chapter 11 cases is equally applicable here. In such cases, most

23

---

24 [36] *City of Sausalito*, 386 F.3d at 1197 (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

25 [37] *Lexmark Intern., Inc., v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).
[38] *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

26 [39] *Lexmark*, 572 U.S. at 130 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)) (internal quotations omitted).
[40] *Thorpe*, 677 F.3d at 884 (quoting *In re Chiu*, 266 B.R. 743, 749 (9th Cir. BAP 2001)).

1  courts find that a party in interest is "any person with a direct financial stake in the

2  outcome of the case[.]"[41]

3      Here, Goldberg and Jess' grievance falls within the zone of interest protected by

4  their constitutional guarantee to due process and they have a direct financial stake in the

5  outcome of this case. Goldberg and Jess argue that the Application to Employ was

6  granted on an *ex parte* basis and not noticed to Goldberg or Jess. Further, Goldberg and

7  Jess contend that the Application to Employ did not mention the Swift Proceeds, nor did

8  the Application to Employ conspicuously disclose the cross-collateralization provision

9  of the Agreement of Counsel. G&K and Schian argue that Goldberg and Jess do not have

10  a direct financial stake because their stake is one layer removed from the instant case.

11  However, it is undoubtedly true that this Court's ultimate ruling on the G&K Application

12  to Employ and the G&K Fee Application will significantly bear on the issue of how much

13  money SW members will receive from the Swift Proceeds. This is particularly true when

14  all or substantially all of SW's creditors have been paid and final disbursements will go

15  to SW's three owners. To not allow Goldberg and Jess to be heard on an issue where they

16  have a significant financial stake in the outcome of the case would improperly deprive

17  them of their constitutional right to due process.

18

19      **V.    CONCLUSION**

20      Goldberg and Jess have a sufficient personal stake in the outcome of the Amazon

21  Adversary and the Swift Adversary Proceeding that warrants a finding by this Court that

22  they have standing to challenge G&K's Application to Employ and G&K's Fee

23  Application. Goldberg and Jess have a legally protected interest that is fairly traceable to

24  the challenged conduct of G&K and will likely be redressed if there is ultimately a

25

26

---

[41] 7 COLLIER ON BANK. ¶ 1109.02 (16h 2023); *see also Thorpe*, 677 F.3d at 884.

1  decision of this Court favorable to them. Goldberg and Jess have standing to object to

2  G&K's Fee Application and G&K's Application to Employ.

3

4  **ORDERED**

5

6  **DATED AND SIGNED ABOVE.**

7  **To be Noticed through the BNC to:**
Interested Parties